[Cite as *In re Murphy*, 2011-Ohio-4350.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: GLENDA L. MURPHY

CHRISTOPHER M. CORBIN

SILVER R. CORBIN

      Applicants

Case No. V2010-50167

Commissioners:
Gregory P. Barwell, Presiding
Elizabeth Luper Schuster

## OPINION OF A TWO COMMISSIONER PANEL

---

{1} On July 9, 2009, the applicants, Christopher and Silver Corbin, filed a compensation application as the result of the death of their mother, Glenda Murphy. On October 26, 2009, the Attorney General issued a finding of fact and decision denying the applicants' claim since the decedent tested positive for cocaine at the time of her death. Accordingly, the applicants' claim was denied pursuant to R.C. 2743.60(E)(1)(e). On November 9, 2009, the applicants submitted a request for reconsideration. On February 9, 2010, the Attorney General rendered a Final Decision finding no reason to modify the initial decision. On February 17, 2010, the applicants filed a notice of appeal from the February 9, 2010 Final Decision of the Attorney General. Hence, a hearing was held before this panel of commissioners on October 21, 2010 at 10:45 A.M.

{2} The applicants their attorneys, Michael Falleur and Kimberley Wells, attended the hearing while the state of Ohio was represented by Assistant Attorney General Georgia Verlaney.

{3} The applicants assert the only issue on appeal is whether the decedent engaged in a violation of R.C. 2925.11 at the time of her death which would disqualify

the applicants' claims for an award of reparations pursuant to R.C. 2743.60(E)(1)(e). The applicants assert the Attorney General has failed to meet its burden of proof to show that the decedent engaged in a violation of R.C. 2925.11 at the time of her death.

{4}The Attorney General asserts that information received from the coroner's office revealed that the decedent tested positive for methylecgonine (cocaine metabolites) at the time of the autopsy. Accordingly, the claim should be denied pursuant to R.C. 2743.60(E)(1)(e). A metabolite is a derivative of cocaine and the term derivative is used in the definition for cocaine in the criminal code R.C. 3719.41 Schedule II (A)(4); R.C. 2925.01(X), and R.C. 3719.01(O)(1). The Attorney General contends that the presence of cocaine metabolites in the decedent's system equates to possession of cocaine. Therefore, once this has been established the burden of proof shifts to the applicants to prove either the testing procedure was erroneous or the individual did not knowingly ingest the drug. Finally, although the Attorney General has the burden of proof with regard to this issue, the Attorney General must meet that burden by a preponderance of the evidence.

{5}The Attorney General called Calvin E. McGuire, Chief Toxicologist of the Franklin County Coroner's Office, to testify. Both parties stipulated that the witness qualified as an expert. Mr. McGuire testified that testing performed on the decedent Glenda Murphy indicated the presence of cocaine metabolites and levamisole, a cutting agent for cocaine. Both benzoylecgonine and methylecgonine are derivatives of cocaine. The body metabolizes these substances to rid itself of these derivatives. Mr. McGuire testified to a reasonable degree of forensic science that the presence of cocaine metabolites in the body can only be achieved by the ingestion or injection of cocaine.

{6}Upon cross-examination, Mr. McGuire conceded that he did not sign off on the toxicology report concerning the decedent. The chief toxicologist at the time Dr. Wyman did. Mr. McGuire testified that the tests were performed on blood received from Grant Hospital. Presumably the victim was alive when the blood was drawn.

{7}On redirect examination, Mr. McGuire testified that benzoylecgonine was detected in the initial screening test, while methylecgonine was detected in the confirmation test.    These results were not inconsistent, but confirmed cocaine metabolites were present in the blood sample.   Finally, Mr. McGuire testified to the chain of custody procedures.

{8}On recross examination, the witness indicated that no cocaine was found in either the decedent's blood or urine.

{9}Upon questioning by the commissioners, Mr. McGuire stated it takes approximately seventy-two hours for cocaine metabolites to leave the system, whereas cocaine cannot be detected after approximately 6 to 10 hours.   The witness stated that the decedent had ingested cocaine within the last seventy-two hours of her death. Whereupon, Mr. McGuire's testimony was concluded.

{10}The applicants called Dr. John Wyman to testify via telephone.   Dr. Wyman is currently Chief Toxicologist at Cuyahoga County Regional Forensic Laboratory, at the time of Glenda Murphy's death, he was Chief Toxicologist in the Franklin County Corner's Office.   He noted he reviewed all the data and that he signed off on the toxicology report for Glenda Murphy.   Dr. Wyman was directed to a letter he authored on September 1, 2009.   In that letter Dr. Wyman wrote:

> {11}"Cocaine (parent molecule) has a very short half-life (approximately 90 minutes) and will not be detectable in blood after about six hours from the last time of exposure (i.e., four half-lives).   The metabolites of cocaine may be detectable in the urine for up to 72 hours from the last time of exposure."

{12}He acknowledged he still holds this opinion and this opinion is within a reasonable degree of forensic certainty.   In this situation, only metabolites of cocaine were found.   Furthermore, since no cocaine was found in the blood that meant that cocaine was not ingested at least six hours prior to the collection of the blood.

{13}Upon cross-examination, Mr. Wyman was directed to a letter provided to the Attorney General's office on July 6, 2010.  Mr. Wyman acknowledged that he wrote the following:

{14}"The metabolites of cocaine 'come from' cocaine so it is my opinion that methylecgonine and benzoylecgonine are derivatives of cocaine."

He stated that this sentence reflects his position today.  He also indicated to the best of his knowledge methylecgonine and benzoylecgonine can only be derived from cocaine. The tests are a confirmation of the decedent's exposure to cocaine.

{15}In closing the Attorney General contends that it has been proven by a preponderance of the evidence that the decedent violated R.C. 2743.60(E)(1)(e) and accordingly, no award should be granted in this case.  Both witnesses testified that derivatives of cocaine were detected in the decedent's body at the time the toxicology test was performed.  The Attorney General maintains that the decedent was in violation of R.C. 2925.11 at the time of her death.  To determine the felony drug involved one must reference R.C. 3719.41 Schedule II (A)(4) which states:

{16}"(A) Narcotics-opium and opium derivatives

"Unless specifically excepted under federal drug abuse control laws or unless listed in another schedule, any of the following substances whether produced directly or indirectly by extraction from substances of vegetable origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

"(4) Coca leaves and any salt, compound, derivative, or preparation of coca leaves (including cocaine and ecgonine, their salts, isomers, and derivatives, and salts of those isomers and derivatives), and any salt, compound, derivative, or preparation thereof that is chemically equivalent to or identical with any of these substances, except that the substances shall not include decocainized

coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine."

{17}Furthermore, R.C. 3719.01(P)(1) states:

"(P) 'Narcotic drugs' means coca leaves, opium, isonipecaine, amidone, isoamidone, ketobemidone, as defined in this division, and every substance not chemically distinguished from them and every drug, other than cannabis, that may be included in the meaning of "narcotic drug" under the federal drug abuse control laws. As used in this division:

"(1) 'Coca leaves' includes cocaine and any compound, manufacture, salt, derivative, mixture, or preparation of coca leaves, except derivatives of coca leaves, that does not contain cocaine, ecgonine, or substances from which cocaine or ecgonine may be synthesized or made."

{18}Finally, R.C. 2925.01(X)(1), (2), and (3) states:

"(X) 'Cocaine' means any of the following:

"(1) A cocaine salt, isomer, or derivative, a salt of a cocaine isomer or derivative, or the base form of cocaine;

"(2) Coca leaves or a salt, compound, derivative, or preparation of coca leaves, including ecgonine, a salt, isomer, or derivative of ecgonine, or a salt of an isomer or derivative of ecgonine;

"(3) A salt, compound, derivative, or preparation of a substance identified in division (X)(1) or (2) of this section that is chemically equivalent to or identical with any of those substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves if the extractions do not contain cocaine or ecgonine."

{19}The Attorney General asserts that derivatives of cocaine are indicia of the presence of a controlled substance in the decedent's body.  Furthermore, the Attorney General's burden of proof is a preponderance of evidence.  This standard was elucidated in the holding in *In re Dawson* (1993), 63 Ohio Misc. 2d 79, wherein a judge

of the court of claims held "the positive evaluation on the toxicology report for the presence of cocaine proves by a preponderance of the evidence that the applicant has committed a felonious act."

{20}The Attorney General asserts possession, as required by R.C. 2925.11, has been established based upon the toxicology report findings that cocaine metabolites, namely methylecgonine and benzoylecgonine, were contained in the decedent's blood sample. The Attorney General urged this panel to follow the court's holdings in *State v. Scott* (May 5, 1994), Cuyahoga App. No. 63234; *State v. McGowan* (August 2, 1993), Cuyahoga App. No. 63491; and *State v. Napper* (November 27, 1991), Marion App. No. 9-91-11.

{21}The Attorney General also asserts that reliance should not be placed on *In re Green*, V2003-40836tc (1-29-04) affirmed jud (5-13-04), since that holding was rendered when the disqualification pursuant to R.C. 2925.11 was listed under the contributory misconduct section of the statute. Consequently, under former R.C. 2743.60(E) there had to be possession of a felony drug pursuant to R.C. 2925.11 plus a causal connection between the possession of the felony drug and the resulting injury. The Attorney General contends under current R.C. 2743.60(E)(1)(e), no causal connection between the felony drug and the conduct need be shown. The Attorney General relies on the holding in *In re Matacia*, V2008-30804tc (2-26-09) affirmed jud (6-2-09), to support the proposition that a positive toxicology report justifies a denial pursuant to R.C. 2743.60(E)(1)(e). While the *Matacia* case involved a positive toxicology test for cocaine, the Attorney General emphasizes the definition of cocaine found in the criminal code and asserts the word "derivative" relates to metabolites found in the decedent's system. Consequently, the Attorney General argues the state has met its burden by the production of the positive toxicology report and then the burden shifts to the applicant to prove either the testing results are faulty or decedent was involuntarily forced to ingest the cocaine.

{22}The Attorney General contends the applicants have failed to rebut this presumption. The Attorney General asserts the standards for rebutting this presumption are set forth in *In re Brown*, V92-91156sc (8-26-93) and *In re Lewis*, V2005-38294tc, 2006-Ohio-4023, affirmed jud 2006-Ohio-6315. In the case at bar, there was no evidence presented by the applicants that the toxicology reports were faulty or that the decedent was forced to ingest cocaine.

{23}Upon questioning by a panel of commissioners the Attorney General stated that to have cocaine or cocaine metabolites in one's system satisfies the requirement contained in R.C. 2743.60(E)(1)(e) of "engaging in conduct that was a felony violation of section 2925.11 of the Revised Code." Also, any chain of custody issue concerns a criminal proceeding and not a special statutory proceeding under R.C. 2743.51 *et.seq.* When questioned concerning the holding in *In re Treadwell*, V97-32891tc (10-20-98), where a panel of commissioners held that although the Rules of Evidence do not strictly apply to the panel proceedings, courts are nevertheless governed by due process limitations, the Attorney General posited there has been no suggestion that any irregularities in the procedure for collection of the specimen existed or that any hospital procedures were not followed.

{24}In closing, the applicants stated that the important issue that must be addressed is timing. According to the police report the homicide occurred at 5:55 A.M. on June 24, 2009, and the autopsy report recorded that Ms. Murphy passed away at 8:57 A.M., the same day. Initially, when the General Assembly enacted the felony exclusion, if a victim was found to use or possess a felony drug anytime within ten years prior to the criminally injurious conduct the claim was denied. However, when the statute was amended to place possession or use of a felony drug under the exclusionary criteria of contributory misconduct, the General Assembly adopted the language "that the victim engaged in conduct at the time of the criminally injurious conduct that was a felony violation of section 2925.11 of the Revised Code." When this section was moved to R.C. 2743.60(E), the felony exclusion, the same language was

retained.   Accordingly, the plain language of the statute requires a nexus of the felony drug use to the occurrence of the criminally injurious conduct.

{25}The applicants also assert that R.C. 2925.11(C)(4)(a) does not bar their claim.

{26}R.C. 2925.11(C)(4)(a) states:

"(C) Whoever violates division (A) of this section is guilty of one of the following:

"(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:

"(a) Except as otherwise provided in division (C)(4)(b), (c), (d), (e), or (f) of this section, possession of cocaine is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender."

{27}The applicants argue that nowhere in the penalty section of R.C. 2925.11 does the word "derivative" appear.

{28}Moreover, the applicants assert the holding in *In re Green* cannot be ignored since it is the only case where the court had to examine the issue of a trace amount of an illegal substance, in that case PCP.  However, both the panel and the judge determined that a trace amount was not enough.  *Green* created two step process: first, the Attorney General must prove that the victim engaged in conduct at the time of the criminally injurious conduct that was a felony violation of R.C. 2925.11; and second, the causal connection between the felony drug use or possession would be presumed to have contributed to the victim's injury or death.  But the rationale, whether contained in former R.C. 2743.60(E) or current R.C. 2743.60(E)(1)(e) is the same.

{29}The applicants contend that the Attorney General has failed to prove the decedent knowingly used cocaine.  In support of this proposition, the applicants cite the case of *State v. Lowe* (1993), 86 Ohio App. 3d 749 the presence of cocaine metabolites

in the appellant's urine does not show that he knowingly used or possessed cocaine); and *State of North Carolina v. Darian Jaquan Harris*, 361 NC 400, 646 SE 2d 526 (a positive urinalysis for marijuana metabolites is not alone sufficient to prove that defendant knowingly or intentionally possessed marijuana). The cases cited by the Attorney General *(State v. Scott, State v. McGown*, and *State v. Napper)* do not support the contention that the sole presence of cocaine metabolites supports a conviction for felony drug use or possession.

{30}In rebuttal, the Attorney General cites the case of *State v. Bassett*, Lucas App. L-01-1493, 2002-Ohio-6689, a case decided by the Sixth District Court of Appeals in Lucas County. That case involved a person charged with violating R.C. 2903.08 (aggravated vehicular assault) and R.C. 4511.19(A)(1) (operating a motor vehicle under the influence of alcohol or a drug of abuse). The appellate court determined the presence of the cocaine metabolite benzoylecgonine was sufficient to prove the driver was under the influence of cocaine at the time of the accident. The Attorney General also cited *In re White*, V2006-21123tc, 2007-Ohio-3490, wherein a panel of commissioners found that inasmuch as the decedent's blood and urine tested positive for the presence of cocaine and benzoylecgonine, the applicant's claim was denied pursuant to R.C. 2743.60(E)(1)(e). Whereupon, the hearing was concluded.

{31}R.C. 2743.60(E)(1)(e) states:

"(E) (1) Except as otherwise provided in division (E)(2) of this section, the attorney general, a panel of commissioners, or a judge of the court of claims shall not make an award to a claimant if any of the following applies:

"(e) It is proved by a preponderance of the evidence that the victim at the time of the criminally injurious conduct that gave rise to the claim engaged in conduct that was a felony violation of section 2925.11 of the Revised Code or engaged in any substantially similar conduct that would constitute a felony under the laws of this state, another state, or the United States."

{32}R.C. 2925.11 provides, in pertinent part, the following:

"(A) *No person shall knowingly obtain, possess, or use a controlled substance.*

\* \* \*

(C) Whoever violates division (A) of this section is guilty of one of the following:

(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, *cocaine*, L.S.D., heroin, and hashish, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:

(a) Except as otherwise provided in division (C)(1)(b), (c), (d), or (e) of this section, aggravated possession of drugs is a felony of the fifth degree." (Emphasis added.)

{33}Former R.C. 2743.60(E) (effective March 18, 1983) states:

"(E) Neither a single commissioner nor a panel of commissioners shall make an award to a claimant who is a victim, or who claims an award of reparations through a victim, who, within ten years prior to the criminally injurious conduct that gave rise to the claim, was convicted of a felony or who is proved by a preponderance of the evidence presented to the commissioner or the panel to have engaged, within ten years prior to the criminally injurious conduct that gave rise to the claim, in conduct that, if proven by proof beyond a reasonable doubt, would constitute a felony under the laws of this state, another state, or the United States."

{34}Former R.C. 2743.60(E)(1), (2), & (3) (effective August 1, 1996) states:

"(E) Neither a single commissioner nor a panel of commissioners shall make an award to a claimant if any of the following applies:

"(1) The victim was convicted of a felony within ten years prior to the criminally injurious conduct that gave rise to the claim or is convicted of a felony during the pendency of the claim.

"(2) The claimant was convicted of a felony within ten years prior to the criminally injurious conduct that gave rise to the claim or is convicted of a felony during the pendency of the claim.

"(3) It is proved by a preponderance of the evidence presented to the commissioner or the panel that the victim or the claimant engaged, within ten years prior to the criminally injurious conduct that gave rise to the claim or during the pendency of the claim, in conduct that would constitute a felony under the laws of this state, another state, or the United States."

{35}Former R.C. 2743.60(E)(1)(2)(3) & (4) (effective July 1, 2000) states:

"(E) The attorney general, a panel of commissioners, or a judge of the court of claims shall not make an award to a claimant if any of the following applies:

"(1) The victim was convicted of a felony within ten years prior to the criminally injurious conduct that gave rise to the claim or is convicted of a felony during the pendency of the claim.

"(2) The claimant was convicted of a felony within ten years prior to the criminally injurious conduct that gave rise to the claim or is convicted of a felony during the pendency of the claim.

"(3) It is proved by a preponderance of the evidence that the victim or the claimant engaged, within ten years prior to the criminally injurious conduct gave rise to the claim or during the pendency of the claim, in an offense of violence, a violation of section 2925.03 of the Revised Code, or any substantially similar offense that also would constitute a felony under the laws of this state, another state, or the United States.

"(4) The claimant was convicted of a violation of section 2919.22 or 2919.25 of the Revised Code, or of any state law or municipal ordinance substantially similar to either section, within ten years prior to the criminally injurious conduct that gave rise to the claim or during the pendency of the claim."

Former R.C. 2743.60(F)(2) (effective July 1, 2000) states:

"(2) There is good cause to believe that the victim engaged in an ongoing course of criminal conduct within five years or less of the criminally injurious conduct that is the subject of the claim.

{36}"For purposes of this section, if it is proven by a preponderance of the evidence that the victim engaged in conduct at the time of the criminally injurious conduct that was a felony violation of section 2925.11 of the Revised Code, the conduct shall be presumed to have contributed to the criminally injurious conduct and shall result in a complete denial of the claim."

{37}The Attorney General has the burden with respect to proof of the felony exclusion contained in R.C. 2743.60(E)(1)(e) [exclusionary criteria R.C. 2743.60]. *In re Williams*, V77-0739jud (3-26-79); and *In re Brown*, V78-3638jud (12-13-79).

{38}Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{39}Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause. The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

{40}Before we render a decision in this matter, we believe it is necessary to review the history of R.C. 2743.60(E), with respect to felony drug possession and use. On March 18, 1983, the Ohio Victims of Crime Compensation Act was amended by the General Assembly to include a provision to bar otherwise eligible victims of crime who either had been convicted of a felony ten years prior to the occurrence of the criminally injurious conduct, or who had engaged in conduct, that if proven beyond a reasonable doubt would have constituted a felony. This statutory provision barred anyone convicted of a felony involving a drug of abuse but also prohibited persons who engaged in felony drug abuse violations who were not criminally prosecuted. In order

to prove a felonious conduct of individuals who never had been convicted in a criminal court, the court determined a positive toxicology report evidencing a controlled substance in the victim's system was sufficient. *In re Dawson* (1993), 63 Ohio Misc. 2d 79; (admission of drug use to medical personnel) *In re Paige* (1994), 66 Ohio Misc. 2d 156; (medical records containing admissions concerning drug use) *In re Porter* (1994), 85 Ohio Misc. 2d 29. This line of cases and its progeny allowed the Attorney General to investigate the victim's conduct ten years prior to the criminally injurious conduct to determine if the victim had engaged in felony drug abuse or possession.

{41}On August 1, 1996, the felony exclusion was expanded to not only include convictions and conduct that occurred ten years prior to the criminally injurious conduct, but convictions or conduct that occurred during the pendency of a victim's claim. Accordingly, any felony drug activity that could be established by a preponderance of the evidence that occurred after the compensation application was filed until a judge of the court of claims rendered a final decision could be examined. *In re Robinson* (1996), 86 Ohio Misc. 7d 9; *In re Sun* (1996), 86 Ohio Misc. 2d 14. If the applicant filed a supplemental compensation application, the Attorney General could investigate the period of time from the initial filing of the compensation application to a final decision being rendered on the supplemental compensation application. Again, the prior case law applied but the time period for examination of the victim's conduct was expanded.

{42}The court refined the scope of R.C. 2743.60(E) as it related to felony drugs. In *In re Trice*, V92-83781tc (4-26-95), the panel presumed a knowing and voluntary ingestion of an illegal drug if confronted with a hospital's positive toxicology report. However, that presumption is only valid if no contrary evidence is presented. *In re Wallace*, V98-38869tc (5-26-99). If the applicant could establish that ingestion of the illegal drug was not knowing or voluntary (*In re Johnson*, V98-34260tc (1-31-90)) or the testing procedures followed were faulty or unreliable *(In re Treadwell*, V97-32891tc (10-20-98)) the felony exclusion did not apply.

{43}On July 1, 2000, the Ohio Victims of Crime Compensation Act was amended again. This amendment introduced R.C. 2925.11, possession of controlled substance, as a specific disqualifying factor. However rather than placing it under R.C. 2743.60(E) the General Assembly moved it to R.C. 2743.60(F). R.C. 2743.60(F) disqualified or reduced an award to a victim engaged in contributory misconduct. This change in the statutory scheme required that the Attorney General prove each element of a violation of R.C. 2925.11 by a preponderance of the evidence and also demonstrate by a preponderance of the evidence "that the victim engaged in conduct at the time of the criminally injurious conduct" that constituted a violation of R.C. 2925.11. Only then was a presumption made that the violation of R.C. 2925.11 contributed to the criminally injurious conduct resulting in a complete denial of the claim. When felony drug use or possession was an exclusionary bar pursuant to R.C. 2743.60(E) effective August 1, 1996, the Attorney General was only required to prove the violation of R.C. 2925.11 either occurred within ten years of the criminally injurious conduct, or during the pendency of the claim. This violation could be based on a positive toxicology test, an admission by the victim, or an admission contained in a medical or police report.

{44}Accordingly, a judge in *In re Sebens*, V2002-50919jud (6-10-03) determined that the victim's admission to law enforcement officers that she took Ecstasy, a commonly used name for MDMA (methylenedioxy-methamphetamine) a Schedule I drug, was not causally related to her subsequent rape and R.C. 2743.60(F) would not act as a bar to an award of reparations.

{45}In *In re Green*, V2003-40836jud (5-13-04) a judge of the court of claims affirmed the panel's decision to allow a claim based on the coroner's opinion that the controlled substance, in that case PCP, was not ingested by the decedent on the day of the criminally injurious conduct, which established that the decedent had not engaged in contributory misconduct.

{46}In *In re Smith*, V2003-41123tc (6-16-04) the panel elucidated the reasoning that must be adopted when applying R.C. 2743.60(F) to a victim who tested positive for a controlled substance.   The panel stated:

{47}"We find it was the General Assembly's intent, with respect to former R.C. 2743.60(F), to exclude only those victims or applicants from participating in the fund whose conduct *actually* caused or aided the criminally injurious conduct. Amended S.B. 153 never altered the definition of contributory misconduct as defined in R.C. 2743.51(M).   Since its inception R.C. 2743.51(M) has always required that a victim's or applicant's conduct have a causal connection to the criminally injurious conduct.   According to R.C. 2743.51(M), there are three elements that must be established before a *prima facie* case of contributory misconduct can be met:   (1) conduct by the victim or the claimant; (2) conduct that is unlawful or intentionally tortious; and (3) that conduct must have a causal relationship to the criminally injurious conduct.   We fail to see how the presence of opiates in this victim's system has a causal relationship to him being shot by Vincent Cross on January 8, 2003."

{48}On June 26, 2003, the General Assembly chose to place the exclusionary language contained in R.C. 2925.11 under R.C. 2743.60(E), the felony exclusion, however, placed the burden on the Attorney General to prove "by a preponderance of the evidence that the victim *at the time of the criminally injurious conduct that gave rise to the engaged in conduct* that was a felony violation of section 2925.11 of the Revised Code."   (Emphasis added).   The General Assembly also added R.C. 2743.60(E)(2) which states:

"(2) The attorney general, a panel of commissioners, or a judge of the court of claims may make an award to a minor dependent of a deceased victim for dependent's economic loss or for counseling pursuant to division (F)(2) of section 2743.51 of the Revised Code if the minor dependent is not ineligible under division (E)(1) of this section due to the minor dependent's criminal

history and if the victim was not killed while engaging in illegal conduct that contributed to the criminally injurious conduct that gave rise to the claim. For purposes of this section, *the use of illegal drugs by the deceased victim shall not be deemed to have contributed to the criminally injurious conduct that gave rise to the claim*." (Emphasis added).

{49}Since current R.C. 2743.60(E)(1)(e) has been in effect a panel of commissioners in *In re Ferry*, V2007-90188tc (8-3-07), developed a three-prong test to determine the applicability of this statutory section when a positive toxicology report for cocaine exists. The applicant must present sufficient evidence that: 1) he or she did not knowingly and voluntarily ingest cocaine; 2) the toxicology results were faulty, due to unprofessional or improper sample collection procedures. *In re Parrish*, V2002-51915tc (8-1-03), 2003-Ohio-4982. The third prong of the test is that the Attorney General has the burden to prove the applicant actually engaged in felonious drug use at the time of the criminally injurious conduct. See *In re Green*, V2003-40836jud (5-13-04), 2004-Ohio-3521.

{50}A panel of commissioners has also found that a violation of R.C. 2743.60(E)(1)(e) does not bar an award to minor dependent children for dependent's economic loss and counseling expenses pursuant to R.C. 2743.60(E)(2). *In re Dyer*, V2004-60261tc (4-21-05) reversed on other grounds jud (10-5-05); *In re Ware*, V2010-50531tc (10-29-10).

{51}From review of the case file, the testimony of the witnesses, and the arguments presented by counsel at the hearing, we find the Attorney General has failed to prove by a preponderance of the evidence that the applicants' claim should be denied pursuant to R.C. 2743.60(E)(1)(e).

{52}The Attorney General urges us to find the decedent possessed cocaine, in violation of 2925.11 since her body contained a cocaine metabolite. It should be noted that the toxicology report prepared as a result of Glenda Murphy's death indicates that cocaine was not detected in her blood. The Attorney General argues since the

definitions of coca leaves contained in R.C. 3719.41 Schedule II (A)(4), R.C. 3719.01(P)(1), and R.C. 2925.01(X)(1), (2) & (3), contain the word "derivative", R.C. 2925.11 should apply to the decedent.  The Attorney General relies on a letter and testimony presented by Dr. John F. Wyman to make the connection between the term derivative and metabolite.  In a letter dated July 6, 2010, Dr. Wyman stated in pertinent part:

> "I have no legal training but I looked up the legal definition for derivative. Derivative was defined as 'coming from another'.  The metabolites of cocaine 'come from' cocaine so it is my opinion the methylecgonine and benzoylecgonine are derivatives of cocaine."

{¶53}The Attorney General also asserts the panel should follow the ruling contained in *State v. Napper* (November 27, 1991), 3rd Dist. No. 9-91-11; *State v. McGown* (August 12, 1993), 8th Dist. No. 63491; and *State v. Scott* (May 5, 1994), 8th Dist. No. 63234.

{54}In *Napper*, *supra*, the Third District Appellate Court addressed the issue of whether the trial court erred in finding the defendant guilty, beyond a reasonable doubt, of using cocaine in Marion County.  The court held based upon "the cocaine and paraphernalia in her residence, and the analysis of her urine along with the testimony regarding the time that cocaine metabolites remain in the urine (T. 11/27/90 p.321), amounted to sufficient evidence before the jury from which it could reasonably infer beyond a reasonable doubt that at least one element of the offense occurred in Marion County."  *Napper, supra,* it should be noted under R.C. 2925.11 the state needed to prove the decedent either knowingly obtained, possessed or used a controlled substance.  Accordingly, in *Napper,* with cocaine and cocaine paraphernalia at the residence it is speculative as to how much weight the trier of fact gave to cocaine metabolites in the defendant's system.  Furthermore, the defendant's conviction for violation of R.C. 2925.11 during the period January 9, 1990 through February 9, 1990 was upheld.  In the case at bar it must be established that the decedent "at the time of

the criminally injurious conduct . . .engaged in conduct that was a felony violation of 2925.11." Accordingly, the holding in *State v. Napper* does not provide this panel with any guidance with respect to the issue at bar.

{55}*State v. McGowan* concerned an issue of whether the defendant used cocaine and was consequently under the influence when he was involved in a fatal automobile accident. The Eighth District Court of Appeals affirmed the defendant's conviction based on his positive test for "high levels" of cocaine metabolites and "free" cocaine in his urine. The defendant in that case was tested at 9:50 P.M. and testimony presented at the trial indicated that based on cocaine metabolites, which were fifteen times greater than what was necessary for a positive test, and the presence of "free cocaine" in his urine, he would have had to have used the cocaine between 5:50 P.M. and 7:50 P.M. The accident occurred at 8:00 P.M. Therefore the court found he was under the influence of cocaine at the time of the accident. In the case at bar, we have no evidence that "free cocaine" was contained in the blood sample nor was any testimony presented that Glenda Murphy had "high levels" of cocaine metabolites in her system when the autopsy was performed.

{56}Finally, in *State v. Scott* the Eighth District Court of Appeals held for the purposes of a conviction under R.C. 2925.11, whether the cocaine was in the defendant's "pocket or his urine is of no effect." The defendant in that case was convicted of aggravated murder and a violation of R.C. 2925.11. Inasmuch as cocaine metabolites remain in a person's urine for 72 hours, the defendant's conviction under R.C. 2925.11 was affirmed since a timeline was presented that the defendant had to have ingested cocaine within hours of the shooting. However, in the case at bar R.C. 2743.60(E)(1)(e) places a qualifier that does not exist with solely a conviction under R.C. 2925.11. R.C. 2743.60(E)(1)(e) not only requires a violation of R.C. 2925.11, but also requires that a violation occur at the time of the criminally injurious conduct.

{57}A review of the history of the felony exclusion reveals that when the exclusion was first enacted by the General Assembly in March 1983, a person who

knowingly used, possessed, or obtained cocaine within ten years prior to the occurrence of the criminally injurious conduct was excluded from participating in the program if such person had been convicted or it could be established by a preponderance of the evidence that said person engaged in such conduct.  At that time, there was no requirement that the cocaine be connected to the criminally injurious conduct in any manner.  When this statutory provision was amended by the General Assembly in August 1996, the time frame for exclusion was extended to include any conviction or conduct, that could be proven by a preponderance of the evidence, which occurred during the pendency of the applicant's claim.  Again conviction or conduct involving cocaine was excluded without any causal connection to the criminally injurious conduct.

{58}In July 2000, the General Assembly specifically addressed R.C. 2925.11, but rather than place this criminal code section under R.C. 2743.60(E), as had been done since the inception of the program, this section was moved to R.C. 2743.60(F). R.C. 2743.60(F) provides for the reduction or denial of awards dealing with contributory misconduct.   Of all the sections in the criminal code concerning felonious conduct, R.C. 2925.11 was singled out for this special treatment.   While the General Assembly specifically addressed three other criminal code sections, R.C. 2925.03, trafficking and aggravated trafficking in drugs; R.C. 2919.22, endangering children; and R.C. 2919.25, domestic violence, these were placed under R.C. 2743.60(E).   Accordingly, they were status offenses that did not require any causal connection to the criminally injurious conduct.

{59}However, R.C. 2743.60(F) was amended to state:

"For purposes of this section, if it is proven by a preponderance of the evidence that the victim *engaged in conduct at the time of the criminally injurious conduct* that was a felony violation of section 2925.11 of the Revised Code, the conduct shall be presumed to have contributed to the criminally injurious conduct and shall result in a complete denial of the claim." (Emphasis added).

{60}The General Assembly provided that if the Attorney General could prove, by a preponderance of the evidence, that the applicant or the victim engaged in a felonious violation of R.C. 2925.11 at the time of the criminally injurious conduct then it would be conclusively presumed that this conduct was causally related to the criminally injurious conduct resulting in a complete denial of the applicant's claim. Therefore, the Attorney General had the burden of proof to prove each element of a felonious violation of R.C. 2925.11, by a preponderance of the evidence. Furthermore, case law held that the presumption created by the General Assembly was a rebuttal presumption. See, *In re Bealer*, V2003-40321tc (12-3-03), 2003-Ohio-7324; *In re Green*, V2003-40836jud (5-13-04), 2004-Ohio-3521; *In re Wilson*, V2004-60997tc (4-21-05), 2005-Ohio-2648; and *In re Smith*, V2003-41123tc (6-16-04), 2004-Ohio-4179. These cases stood for the proposition that once the Attorney General establishes the felonious violation of R.C. 2925.11, then the burden of proof shifts to the applicant but it is a rebuttal presumption that the applicant can overcome by presenting testimonial or documentary evidence. Nevertheless, the Attorney General has the burden to show the violation of R.C. 2925.11 occurred at the time of the criminally injurious conduct.

{61}On June 26, 2003, the General Assembly again amended R.C. 2743.60(E) and R.C. 2743.60(F). This amendment resulted in the exclusion regarding R.C. 2925.11 being moved from R.C. 2743.60(F) and placed under a new statutory section in R.C. 2743.60(E). This new amendment deleted language concerning the "conclusive presumption" but retained the language requiring that it be "proved by a preponderance of the evidence that the victim *at the time of the criminally injurious conduct* that gave rise to the claim *engaged in conduct* that was a felony violation of section 2925.11 of the Revised Code." (Emphasis added).

{62}Curiously, the General Assembly added R.C. 2743.60(E)(2). This statutory section allowed minor dependents of a deceased victim who was in violation of R.C. 2743.60(E)(1)(a)-(e) to receive an award for dependent's economic loss and counseling expenses as long as the minor dependent was not personally disqualified

pursuant to R.C. 2743.60(E)(1) or the decedent was not engaged in contributory misconduct at the time of the death. The final sentence of R.C. 2743.60(E) states: "For purposes of this section, the use of illegal drugs by the decedent victim shall not be deemed to have contributed to the criminally injurious conduct that gave rise to this claim." Tacitly, the General Assembly was acknowledging that illegal drug use needed a causal connection to the criminally injurious conduct. For a minor dependent to be excluded under this section, the decedent's drug activity had to constitute contributory misconduct. Anything less would result in an award to the minor dependent. In order to deny the case at bar, the Attorney General must prove, by a preponderance of the evidence, each element of R.C. 2925.11. R.C. 2925.11 in pertinent part states:

"(A) No person shall knowingly obtain, possess, or use a controlled substance.

"(C) Whoever violates division (A) of this section is guilty of one of the following:

"(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, and hashish, whoever violates division (A) of this section is guilty of aggravated possession of drugs."

{63}Nowhere in this statutory definition are the words derivative or metabolite used in connection with violation of this criminal section. Furthermore, a review of the penalty sections of this statute reveal the punishment imposed is based on bulk amount or grams. Accordingly, the Attorney General's argument that a violation of R.C. 2925.11 can be established by derivatives or metabolites of an illegal drug does not have statutory support.

{64}Finally, based upon a review of the claim file and the evidence presented at the hearing this panel finds that the Attorney General was unable to prove by a preponderance of the evidence that the decedent engaged in a violation of R.C. 2925.11 at the time of the criminally injurious conduct. Accordingly, the February 9, 2010 decision of the Attorney General is reversed.

_____
GREGORY P. BARWELL
Presiding Commissioner

_____
ELIZABETH LUPER SCHUSTER
Commissioner



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: GLENDA L. MURPHY

CHRISTOPHER M. CORBIN

SILVER R. CORBIN

      Applicants

 Case No. V2010-50167

Commissioners:
Gregory P. Barwell, Presiding
Elizabeth Luper Schuster

OPINION OF A TWO
COMMISSIONER PANEL

_____
    IT IS THEREFORE ORDERED THAT

{65}1)   The February 9, 2010 decision of the Attorney General is REVERSED and judgment is rendered in favor of the applicants;

{66}2)    This claim is remanded to the Attorney General for total economic loss calculations and decision;

{67}3)   This order is entered without prejudice to the applicants' right to file a supplemental compensation application, within five years of this order, pursuant to R.C. 2743.68;

{68}4)   Costs are assumed by the court of claims victims of crime fund.

_____
GREGORY P. BARWELL
Presiding Commissioner

_____
ELIZABETH LUPER SCHUSTER
Commissioner

ID #I:\Victim Decisions to SC Reporter\Panel Decisions\2011\March 2011\V2010-50167 Murphy.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Franklin County Prosecuting Attorney and to:

Filed 5-6-11
Jr. Vol. 2278, Pgs. 102-103
Sent to S.C. Reporter 8-30-11